[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This action, by writ and complaint, claiming a dissolution of the marriage of the parties and other relief, as on file, came to this court on April 4, 1996, with a return date of April 16, 1996, and thence to later dates when the defendant appeared. Both parties appeared for a limited contested trial on July 17, 1997.
The court, having heard the evidence, finds the following:
The wife, Carol A. Sheridan, whose maiden name was Carol A. Mattatall, was lawfully married to the husband, Robert J. Sheridan, on February 13, 1962 in Springfield, Massachusetts.
At least one party has resided continuously in this state twelve months next before the date of the filing of the complaint and all statutory stays have expired.
The marriage of the parties has broken down irretrievably. CT Page 9810
Five children have been born to the plaintiff wife and the parties adopted one child since the date of the marriage, all of whom have attained the age of majority. There are no minor children issue of the marriage, and no minor children have been born to the wife since the date of the marriage.
The wife is 55 years old and in good health. She has a three-year nursing diploma and is a registered nurse, with a specialty certification in rehabilitation. Although she continued to work as a nurse in the early years of the marriage, she became a full time homemaker in 1971 after the birth of her third child. She entered a retraining program and returned to work as a nurse in 1990. She left work at Hartford Hospital for a job with the Visiting Nurse's Association which pays less but provides better health benefits. She has no pension plan or retirement accounts. She has few assets, and her liabilities exceed $14,303.19. Her earning capacity is likely to increase in the future, but not significantly.
The husband is 56 years old and has infrequent health problems due to lupus. In the early years of the marriage, he was employed as a construction worker and later worked in the insurance industry for several major companies and an independent agency. He eventually started his own insurance agency, Sheridan Associates. In the 1980's, the husband was involved in a number of real estate ventures, some of which were quite successful, and the family had significant income. The couple purchased a large home with a number of acres in South Windsor which once was appraised for nearly a million dollars. Unfortunately, husband's land ventures began to go sour in the late 1980's after the recession of 1987. While trying to stay afloat, several mortgages were placed on the marital home. Unfortunately, the husband's ventures eventually failed. In 1989, he was forced to sell his insurance business, (the money received went to pay debts owed to insurance companies), and the marital home was lost to foreclosure. The husband was also convicted of a felony related to his involvement in one real estate deal in Glastonbury.
After the foreclosure, the couple and their younger children moved from place to place, often because the rent was not paid. While the wife worked as a nurse, paying most of the bills, the husband continued entrepreneurial ventures which were not successful. Presently, the wife's paycheck is garnished to collect a judgment for unpaid rent. During this stressful time period, the wife commenced an extramarital affair, which ended in CT Page 9811 1993. The couple attempted marital counseling, but finally separated in September of 1995. The wife's pay-check was also garnished to collect a debt owed to the counselor.
In September of 1995, the husband took a job as a courier with Beaver Express and was steadily employed there, averaging 40 to 45 hours per week at $15.00 per hour until May of 1997. He states he voluntarily left this employment because he was unhappy about a proposed change to his courier route. He has no income as of the date of trial, and had not even tried to apply for unemployment; however, the court finds that as of the date of trial the husband had an earning capacity of $450.00 per week, which he voluntarily diminished prior to the commencement of the dissolution trial. The court also notes that the husband's knowledge and experience in insurance and real estate is considerable. With effort, the husband's earning capacity may significantly exceed the above amount over the next few years. The husband has no retirement plan or account, has few assets and his liabilities are in excess of $12,000.00. He is again exploring a business venture in the sale of prefabricated steel houses. He claims the Internal Revenue Service owes him money, but the wife's tax refunds are being intercepted for taxes not paid during the course of the marriage.
On June 24, 1996, the husband was ordered to pay the wife $83.93 weekly alimony, pendente lite. On February 10, 1997, he was found in contempt for failure to make these payments, and a wage withholding was ordered, but never issued. As of the date of trial, the husband is in arrears on this pendente lite order.
With regard to fault resulting in the breakdown of the marriage, the court finds the parties are equally to blame for its demise. The extent of the parties' financial setback was too severe an impediment to the continuation of a healthy marital relationship.
With regard to the division of property and the wife's request for periodic alimony and counsel fees in this case, the court has considered case law, the testimony of the witnesses, the exhibits, the financial affidavits of the parties, and their proposed orders. In addition, the court has taken into consideration all of the criteria set forth in General Statutes § 46b-81 as to the division of marital assets, § 46b-82 as to awarding alimony, and § 46b-62 as to awarding counsel fees. CT Page 9812
Accordingly, the court enters the following orders:
1. A decree of the dissolution of the parties' marriage will enter on the grounds of an irretrievable breakdown of the marriage.
2. Effective October 1, 1997, the husband will pay to the wife the sum of $100.00 per week as periodic alimony until the happening of the first event of the wife reaching the age of 65 years, the death of either party, or the remarriage or cohabitation of the wife. The alimony payments will be secured by an immediate wage withholding order. The plaintiff husband is to make diligent efforts to secure employment or steady income, and he is to notify the wife as to the name and address of his employer within 48 hours of the date he resumes or changes employment, or notify the wife within 48 hours of his receipt of any income from any source, including, but not limited to, unemployment benefits, draws, commissions, consulting fees, contractual payments, disability income, profits, dividends and tax refunds. The husband is also to provide the wife with a copy of his income tax return annually, within 30 days of the date of filing said return.
3. The wife will continue to carry the defendant husband as a named insured on her medical insurance plan presently available from her employer pursuant to COBRA, and the husband will pay all costs associated with the maintenance of said insurance.
4. Each party will be responsible for the debts listed on their respective financial affidavits and indemnify and hold the other harmless for said debts.
5. Each party will be responsible for his or her own attorney's fees.
6. The husband will turn over to the wife the following articles of personal property now in his possession: the wife's mother's lace tablecloth and two Waterford beer mugs.
7. The husband will pay to the wife the sum of $1,426.81 (17 weeks as of 7/15/97) which is owed pursuant to pendente lite alimony contempt orders, within 120 days of the date of this judgment.
KELLER, J. CT Page 9813